Clyde Hutchins, Bar No. 6-3549
Harmony Law, LLC
155 E. Boardwalk Drive, Suite 400
Fort Collins, CO 80525
Telephone: 970-488-1857
hutchins@harmony.law

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| B.V. Reomie Automateriaal, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 22-cv-91 |
| | ) |
| IDE Invest and Real Estate, LLC, | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT**

Comes now Plaintiff **B.V. Reomie Automateriaal**, by and through counsel, and for its Complaint against Defendant **IDE Invest and Real Estate, LLC**, states and alleges as follows:

1. Plaintiff B.V. Reomie Automateriaal is a private company with limited liability formed under Dutch law, with its principal place of business in the Netherlands.

2. Defendant IDE Invest and Real Estate, LLC is a limited liability company formed under Wyoming law, with its principal place of business in Sheridan, Wyoming.

3. This Court has diversity jurisdiction over Plaintiff's claims pursuant to 28. U.S.C. § 1332 because there is complete diversity between the Plaintiff and Defendant, and the

amount in controversy in the aggregate is in excess of $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over Defendant because it is incorporated in the State of Wyoming and has its principal place of business in this state.

5. The Court's exercise of personal jurisdiction over the Defendant is consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

6. Venue is proper in the District of Wyoming pursuant to 28 U.S.C. § 1391 because the Defendant is located in this District.

## BACKGROUND

7. Plaintiff is in the business of acquiring and selling used surplus jeep and truck parts.

8. Plaintiff owned an 8-hectare industrial property (Property) in the Netherlands, on which was located a massive inventory of used surplus parts. Most of the inventory was stored in two huge warehouses, each approximately 10,000 square meters in size.

9. In 2017, Plaintiff began taking steps to sell the Property by engaging the services of a broker. In any purchase agreement it eventually negotiated, Plaintiff intended to provide sufficient time to sell off its massive inventory filling the two warehouses. Plaintiff communicated this requirement to its broker.

10. In the summer of the year 2020, a developer, Schipper Bosch Vastgoedprojecten B.V. (Schipper Bosch), became interested in purchasing the Property. Schipper Bosch

Complaint
*B.V. Reomie Automateriaal v. IDE Invest and Real Estate, LLC*
Page 2 of 10

had intentions of rezoning the Property from industrial to residential, and creating a residential development.

11. Schipper Bosch contacted the broker about purchasing the Property. Without naming the company, the broker advised the Plaintiff that a party was interested in the Property and would be providing a letter of intent in the near future.

12. Around this time, in June 2020, the Plaintiff's founder became seriously ill. He had been directing the Plaintiff's activities to sell the Property up until that time. The founder's family had to take care of him. Although she was not fluent in Dutch, the founder's wife was forced to take on the responsibility of handling the sale of the Property from that time forward.

13. Before the broker informed Plaintiff about Schipper Bosch, Defendant surreptitiously retained the broker as its agent to assist Defendant in inserting itself as the buyer. Defendant planned to act as a middleman, and resell the Property to Schipper Bosch for a handsome profit.

14. In mid-2020, Defendant contacted Plaintiff about purchasing the Property. Defendant submitted a written contract with the proposal. Defendant proposed that it would purchase the Property and develop residential housing on it. The payment terms would stretch over several years.

15. On or about August 21, 2020, Defendant advised Plaintiff that the offer was only open for 10 days, and that Plaintiff should act quickly because of upcoming regulatory obstacles that would diminish the ability to rezone the Property from industrial to

residential. Specifically, Defendant advised Plaintiff that the Property would become agriculturally zoned if the contract was not signed, thereby limiting possible uses of the Property and causing a great loss in value.

16. Defendant's representations of August 21, 2020 that there were upcoming regulatory obstacles that would diminish the ability to rezone the Property to residential and that the Property would be rezoned as agricultural were false, and were intended to induce Plaintiff into entering a contract to sell the Property to Defendant.

17. Plaintiff requested more time to engage in due diligence on Defendant, especially since the payment terms would extend over many years. Plaintiff also proposed some amendments to the proposed written contract.

18. During the month of August 2020, the founder's medical condition further deteriorated and he passed away on August 30, 2020. Defendant was well aware of the founder's illness and death and knew that this was a difficult time for Plaintiff's representatives.

19. In blatant disregard to the founder's death, on or about September 4, 2020, Defendant sent an email communication to Plaintiff in which it continued to press for a quick agreement on the purchase of the Property. Defendant stated that it had "freed up funds and man-hours to get started with this project" and that Defendant would "only work on a project if it is owned" by Defendant. Defendant further threatened to "shift our funds and attention to other locations that we can work with" if Plaintiff did not agree to the transaction.

20. Despite its representations of September 4, 2020 suggesting that Defendant had a long history of development projects, Defendant had only been formed for a few weeks at the time. Defendant did not have employees incurring "man-hours" or "funds" that needed freeing up. Defendant had never worked on a project. Defendant had never owned a project or any real property at all. Defendant did not have other locations in which to focus its attention. The statements in the email communication were false and were intended to convince Plaintiff that Defendant was a legitimate developer and thus induce Plaintiff into entering a contract to sell the Property to Defendant.

21. On or about September 7, 2020, Defendant made an alternative offer. It offered to enter into an option contract with Plaintiff for the purchase of the Property. The option would remain open for one year.

22. On or about September 17, 2020, in reliance upon Defendant's statements suggesting that it was a legitimate developer, and in reliance on Defendant's statement that there were pending obstacles regarding the zoning of the Property, Plaintiff executed the option agreement with Defendant.

23. On October 11, 2020, in anticipation of negotiating a final purchase agreement, Plaintiff sought more information from Defendant. Plaintiff sought information about the ownership of Defendant, its credentials, its agents, and related information.

24. On or about October 14, 2020, Defendant created a website with the following URL: https://idevastgoed.com/, followed shortly thereafter by another website at the following URL: https://ideinvestvastgoed.com/. Both websites included the following

statement in the footer: "Copyright© 2020 IDE Invest and Real Estate." The websites consisted mostly of text and images copied from other websites, including the commercial websites of Royal HaskoningDHV, an engineering company from the Netherlands, and Royal BAM Group, a contracting company from the Netherlands. Neither of these companies are associated with, or in any way connected to Defendant. The websites also included images of the John Lewis department store in Oxford Street, London, UK, and the Museum of Contemporary Art in Los Angeles, USA, falsely suggesting that these developments were created by Defendant. There were in fact no images of actual projects or developments created by Defendant. The websites falsely gave the impression that Defendant was an experienced developer.

25.     On October 20, 2020, Defendant responded to Plaintiff's request for more information. Defendant stated that Defendant was a foreign entity that is accepted and allowed to work in the Netherlands. Defendant also provided a html link to one of the false websites, at the following URL: https://idevastgoed.com/, and stated that it was for "IDE Netherlands."

26.     In response to Defendant's October 20, 2020 communication, Plaintiff sought specific business registry information for Defendant, including ownership. Plaintiff also insisted on either proof of funds, or proof that Defendant had completed developments before.

27. Defendant provided a document entitled "Projects NL" containing information about projects that Defendant represented it had completed. Defendant did not answer any of Plaintiff's other questions.

28. None of the projects shown in the document "Projects NL" were completed by Defendant. The project document contained images of real estate developments purported to have been completed by Defendant. After due diligence, it was found that these developments were mostly carried out by Schipper Bosch and Van Bekkum Group B.V.

29. At that time, Plaintiff objected to continuing the transaction with Defendant in view of the unanswered questions and lack of transparency. Plaintiff also objected because the developments listed in the document entitled "Project NL" all seem to have been completed by Schipper Bosch and Van Bekkum Group B.V., not Defendant.

30. Realizing that its fraud was being exposed, Defendant advised Plaintiff that it was abandoning its negotiating position under the option contract and said it would give its permission for Schipper Bosch to take its place as the developer.

31. On March 1, 2021, Defendant's agent, the broker, presented Plaintiff with a signed purchase agreement from Schipper Bosch. The purchase agreement accompanied a conditional waiver from Defendant that stated as follows:

> IDE Invest and Real estate LLC will waive its rights to the option agreement signed 17th September 2020 if all and every terms and conditions in the included signed sales contact are met.

32. Unbeknownst to the Plaintiff at the time, the Defendant's agent, the broker, had already signed the purchase agreement on behalf of Plaintiff. The agent utilized an old

rescinded power of authority from Plaintiff to convince Schipper Bosch that it had authority to sign the purchase agreement. The copy that was presented to Plaintiff for review only had Schipper Bosch's signature.

33. At the time, Defendant knew that Plaintiff intended to sell off the inventory on the Property. Yet, the terms of the purchase agreement that had been negotiated by Defendant's agent, did not provide a sufficient amount of time for Plaintiff to sale off its massive inventory.

34. Eventually, Plaintiff learned that the purchase agreement had already been fully signed and that Schipper Bosch considered it a binding agreement despite the invalid and rescinded power of authority. Plaintiff challenged the legitimacy of the purchase agreement and sought to renegotiate the agreement with Schipper Bosch. Due to the restrictions put in place by Defendant's conditional waiver, Schipper Bosch was unwilling to renegotiate the terms and insisted on strict adherence to the terms of the purchase agreement.

35. In an effort to minimize the damages caused by Defendant's interference, the Plaintiff made efforts liquidate its inventory as quickly as possible in accordance with the terms of the purchase agreement.

36. Due to the short time period in which to vacate the Property, Plaintiff had no choice but to scrap much of the inventory and sale off inventory at a huge discount from what it would have been able to obtain if the purchase agreement had provided sufficient time to sale off the inventory, causing a loss to Plaintiff in excess of $5,670,000.

37. At all times relevant to the allegations in this Complaint, the broker acted as the agent of Defendant.

## COUNT I: INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

38. Plaintiff repeats and realleges the allegations of paragraphs 1 through 37, as though fully set forth herein.

39. Plaintiff had a valid business expectancy in selling its real property on terms which allowed Plaintiff to liquidate its massive inventory at a profit.

40. Defendant knew about Plaintiff's business expectancy.

41. Defendant intentionally and improperly interfered with Plaintiff's business expectancy causing termination of the business expectancy in liquidating its massive inventory at a profit.

42. Plaintiff suffered damages as a result of Defendant's interference with its business expectancy.

## COUNT II: INTENTIONAL MISREPRESENTATION

43. Plaintiff repeats and realleges the allegations of paragraphs 1 through 42, as though fully set forth herein.

44. Defendant made a false representation intending to induce action by the Plaintiff.

45. Plaintiff reasonably believed the representation to be true.

46. Plaintiff suffered damages in reliance upon the false representation.

## PRAYER FOR RELIEF

Plaintiff B.V. Reomie Automateriaal prays for judgment as follows:

(a) That this Court grant judgment in favor of Plaintiff and against Defendant in an amount to be proved at trial;

(b) For pre and post judgment interest; and

(c) That this Court grant such other and further relief as this Court may deem just and proper.

Respectfully submitted this 26th day of April, 2022.

Attorney for Plaintiff

_____
Clyde Hutchins, Bar No. 6-3549
Harmony Law, LLC
155 E. Boardwalk Drive, Suite 400
Fort Collins, CO 80525
Telephone: 970-488-1857